Per Curiam.
 

 The significant issue in these consolidated appeals is whether the pension benefits received by the plaintiffs are “like benefits” for purposes of subsection 161(l)(c) of the Worker’s Disabil
 
 *399
 
 ity Compensation Act (WDCA), MCL 418.161(1)(c); MSA 17.237(161)(l)(c). The three plaintiffs are police officers who received disabling injuries in the course of their employment before they attained twenty-five years of service as police officers and before they reached the age of fifty-five. Each plaintiff accepted “duty disability pension” benefits under the retirement plan adopted in defendant’s city charter for police officers and fire fighters. When plaintiffs reached twenty-five years of creditable employment service or the age of fifty-five, their disability benefits were reduced under the charter plan to an amount equal to what a nondisabled retiring officer would receive as a regular retirement pension. The question before us is whether the change in benefit amount constituted a change in the nature of the benefits from disability benefits to regular retirement benefits. Plaintiffs contend that the change in the amounts of their disability benefits altered their nature, making them retirement benefits, and thus lifting the “like benefits” restriction and entitling plaintiffs to now claim worker’s compensation benefits in addition to their alleged regular retirement benefits.
 

 Defendant’s city charter establishes a retirement system for police officers that provides a pension of fifty percent of an officer’s average final compensation once the officer has at least twenty-five years of service and has attained the age of fifty-five. A different part (part B) of the same charter article provides for duty disability pensions. If an officer is disabled before he has twenty-five years of service, the duty disability pension is equal to 66-2/3 percent of his pay. Officers who receive a duty disability pension after they have twenty-five years of service and officers
 
 *400
 
 (such as the instant plaintiffs) who receive a duty disability pension and subsequently achieve twenty-five years of service (taking into account the years in which a duty disability pension was received) receive a “reduced disability allowance” that is computed in the same manner as a regular retirement pension. Detroit City Charter, tit IX, ch VII, art VI, part B, subsection 2(b) provides as follows:
 

 If such member, at the time of his retirement, shall have a total of twenty-five years or more of creditable service or on the expiration of the period when a member retired and receiving benefits under (a) above would have such total had he continued in active service, he shall receive a reduced disability allowance computed in the same manner as the allowance provided in Part A of this Article with optional benefits as provided in Part H of this Article.
 

 MCL 418.161(l)(c); MSA 17.237(161)(l)(c) bars a municipal police officer from receiving both worker’s compensation benefits (other than medical benefits) and “like benefits” provided by the officer’s employing municipality. Subsection 161(l)(c) provides as follows:
 

 Police officers, fire fighters, or employees of the police or fire departments, or their dependents, in municipalities or villages of this state providing like benefits, may waive the provisions of this act and accept like benefits that are provided by the municipality or village but shall not be entitled to like benefits from both the municipality or village and this act; however, this waiver shall not prohibit such employees or their dependents from being reimbursed under section 315 for the medical expenses or portion of medical expenses that are not otherwise provided for by the municipality or village. This act shall not be construed as limiting, changing, or repealing any of the provisions of a charter of a municipality or village of this state relating to
 
 *401
 
 benefits, compensation, pensions, or retirement independent of this act, provided for employees.
 

 “like benefits” are periodic payments for disability “Like benefits” are not necessarily benefits identical to or “co-extensive in every detail” with worker’s compensation benefits.
 
 MacKay v Port Huron,
 
 288 Mich 129, 134; 284 NW 671 (1939);
 
 Johnson v Muskegon,
 
 61 Mich App 121, 126; 232 NW2d 325 (1975).
 
 MacKay
 
 found that municipal disability benefits were “like” worker’s compensation benefits even though the pension benefits received under the charter were less and did not provide for funeral expenses and even though the duration and amount of the benefits were different.
 

 In the cases before us, plaintiffs’ disability pensions were reduced pursuant to defendant’s disability pension plan in defendant’s charter. These reductions were explained in defendant’s charter, were therefore foreseeable, and should not have surprised plaintiffs. The reductions were part of the same plan that enabled the plaintiffs to receive 66-2/3 percent of then-pay for many years, whereas an officer who had more than twenty-five years of service would have received only fifty percent of his pay. While it is true that the amount of benefits plaintiffs now receive represents the same amount they would have received had they retired healthy after twenty-five years of service, it is also true that the amount they now receive remains governed by defendant’s charter provision regarding disability pensions. Although the amount plaintiffs receive has been reduced, that reduction constitutes part of defendant’s disability pension plan for police officers. The payments plaintiffs receive are still periodic payments for a disability. Consequently, we hold
 
 *402
 
 that the benefit payments plaintiffs received from defendant are “like benefits” under subsection 161(l)(c).
 

 Although our sympathies lie with those individuals disabled in the line of duty, we are bound by the clear and unambiguous language of subsection 161(l)(c) of the wdca and the applicable Detroit City Charter provisions. As long as plaintiffs continue to receive disability benefits, they are precluded from receiving like worker’s compensation benefits. Well-established rules of statutory construction mandate that we enforce this clear statutory and city charter language.
 
 Sun Valley Foods Co v Ward,
 
 460 Mich 230, 236; 596 NW2d 119 (1999) (if the language of the statute is unambiguous, the Legislature must have intended the meaning clearly expressed, and the statute must be enforced as written);
 
 Detroit v Walker,
 
 445 Mich 682, 691; 520 NW2d 135 (1994) (statutory construction rules also apply to the interpretation of city charter provisions).
 

 Plaintiffs’ principal support for their position that their disability pension converted to a regular retirement pension is
 
 Hatton v Saginaw,
 
 159 Mich App 522; 406 NW2d 871 (1987). In
 
 Hatton,
 
 this Court recognized that the plaintiff fire fighter’s duty disability retirement pension benefits received before the plaintiff reached fifty-five years of age were “like benefits” under subsection 161(l)(c), but this Court further concluded that when the plaintiff reached fifty-five and the benefits were recalculated, the plaintiff was then “actually receiving” retirement benefits and therefore the benefits “should be considered” a retirement pension rather than a disability pension.
 
 Hatton, supra
 
 at 531.
 

 
 *403
 
 For several reasons,
 
 Hatton
 
 is not reliable authority to be applied in the instant cases. Significantly, the benefit plan in
 
 Hatton
 
 allowed an employee to receive both plan benefits and worker’s compensation benefits. The terms of the Saginaw plan are discussed in
 
 Hatton
 
 and in
 
 Bannan v Saginaw,
 
 420 Mich 376; 362 NW2d 668 (1984), aff’g
 
 Bannan v Saginaw,
 
 120 Mich App 307; 328 NW2d 35 (1982). Furthermore, without much in the way of meaningful analysis,
 
 Hat-ton
 
 disagreed with the prior decision in
 
 Johnson, supra.
 
 See
 
 Hatton, supra
 
 at 532. Yet the
 
 Johnson
 
 decision relied on a Supreme Court decision, namely,
 
 MacKay, supra.
 
 In addition, for part of its analysis
 
 Hatton
 
 was guided by
 
 Franks v White Pine Copper Division,
 
 422 Mich 636; 375 NW2d 715 (1985). Barely three weeks after release of the
 
 Hatton
 
 decision, the Legislature enacted 1987 PA 28. The Governor signed this act into law with immediate effect on May 14, 1987. Public Act 28 amended § 354 of the WDCA, MCL 418.354; MSA 17.237(354), adding subsection 17 as follows:
 

 The decision of the Michigan Supreme Court in
 
 Franks v White Pine Copper Division,
 
 422 Mich 636 (1985), is declared to have been erroneously rendered insofar as it interprets this section, it having been and being the legislative intention not to coordinate payments under this section resulting from liability pursuant to section 351, 361, or 835 for personal injuries occurring before March 31, 1982. It is the purpose of this amendatory act to so affirm. The remedial and curative amendment shall be liberally construed to effectuate this purpose.
 

 That statutory amendment was ultimately respected and effectuated by this Court,
 
 Romein v General Motors Corp,
 
 168 Mich App 444; 425 NW2d 174
 
 *404
 
 (1988), the Michigan Supreme Court,
 
 Romein v General Motors Corp,
 
 436 Mich 515; 462 NW2d 555 (1990), and the United States Supreme Court,
 
 General Motors Corp v Romein,
 
 503 US 181; 112 S Ct 1105; 117 L Ed 2d 328 (1992). In sum,
 
 Hatton
 
 is not meaningful authority for deciding the issue before us, which concerns a benefit plan established by the city charter of Detroit.
 

 The Courts in
 
 MacKay
 
 and
 
 Johnson
 
 examined the
 
 nature
 
 of the benefits, not merely the amounts thereof, in determining whether disability benefits paid under a municipal pension plan constituted “like benefits.”
 
 MacKay, supra
 
 at 134-135, concluded that a fire fighter’s widow was not entitled to worker’s compensation benefits as well as the pension benefit she accepted after her husband’s work-related death. In
 
 Johnson, supra
 
 at 125-128, the plaintiff, who was a police officer, was not entitled to both duty disability retirement benefits and worker’s compensation benefits. Similarly, the instant plaintiffs accepted duty disability pension benefits. They are therefore barred by subsection 161(l)(c) from receiving worker’s compensation benefits. The fact that the duty disability pension benefits changed in amount does not signify that they changed in nature.
 

 Consistent with this opinion, the decision of the Worker’s Compensation Appellate Commission (WCAC) in Docket No. 203490 denying benefits to plaintiffs Pryor R. Crowe and Albert E. Conant is affirmed, while the wcac’s decision in Docket No. 211399 granting benefits to plaintiff Euan D. Singleton is reversed.